May it please the Court, my name is Douglas Nelson. On behalf of the petitioner, I'd like to reserve two minutes for rebuttal. The petitioners were granted the relief of withholding of removal and protection under the U.N. Convention Against Torture, so the Court may be asking what are we doing here? Because without asylum, these petitioners are in essence ghosts in the United States. They don't have any permanent status to be here. They have to report to deportation officers every six to twelve months, and those officers invariably say, I don't have your file, come back later. And then when they do have the file, they ask, why weren't you granted asylum? Because generally, asylum, or persons who are granted withholding, but... Well, I think we understand the difference. I think we, I think we know what the issue is here, so I think, why don't we look to the pool of factors then? Very good, Your Honor. If we look at the judge's decision at pages 47 and 48 of the record, we have his analysis of whether the petitioners deserve asylum. And all that he concentrates on is that they circumvented orderly refugee procedures. He does not take into consideration all of the other factors of PULA. Well, now, he only has to consider the relevant ones, for the most part. And in my view, and this is just my view, that the one that probably, if we're going to say that one, that if one got a short shrift, the one that I would say that would relevant, that would be your strongest argument would be talking about family. Yes, Your Honor. Family is very important, because this is the only country where the family, but they have the specter of being separated from that family, because withholding is a temporary relief. In the future, if circumstances were to improve, they could be removed from the United States, although unlikely, but it is something that they carry with them. Now, beyond family, though, there are some other very significant factors that the judge was aware of and did not consider. In particular, the respondent said that when he was tortured in 1993, he lost most of his vision. And a medical condition is a compelling factor under matter of PULA and also matter of age. And that is where the agency failed to follow its own precedent decision in examining those important factors. The petitioner also testified that he has chronic leg problems because of the torture and that he has frequent headaches. Well, I think that obviously the IJ was concerned about, you know, that, and I think probably a factor that your clients were jumping ahead of everyone else in line in immigration. They had been to Greece, they had been to Australia, and there was discussion in the hearing, I believe in Greece, that they didn't think they could get asylum or they felt it only important people would get asylum. And then in Australia, that mister, I believe, testified that he had applied for it, but he didn't really have, he didn't have the paper proof of it. And so, you know, obviously from the standpoint, I mean, everyone, you know, there's a lot of people, understandably, that would like to be here. They had been in other countries and the IJ just felt like, hey, they wanted to be here more than anywhere else, and they had opportunities to be somewhere else. Well, they did want to be here more than anywhere else because this is where they have family, and they do not have family in those other countries. But didn't that in and of itself, would that just trump everything? No, and that's why it's only one of the components in the discretionary decision-making process. But going to your question as to whether they circumvented orderly refugee procedures, I think it's important to note that when they became aware that a procedure was available to them, they applied, and they went to the Australian government and did ask them for asylum. They did not believe that they had a legitimate chance of success of applying in Greece or the other countries. Now when Australia said no, their only remaining option was to come to the border. And our country, Congress implemented specific refugee procedures at the border to allow persons in these identical circumstances to apply. Apparently the IJ didn't believe Mr. Stefo about those things, is that right? I'm sorry, he did not believe him as to whether he thought, whether my client thought those procedures were available to him, Your Honor? Whatever your client testified to regarding Australia or why they didn't apply in Greece. He did not use those or give them any weight when it came to denying the application. He could have clearly denied on credibility grounds had he found the client not credible. Well, he found them generally credible, I think. That's correct. But then on the other hand, there is language on, I think, as Judge Reid indicated, that he was kind of troubled that there wasn't documentation from Australia. And he did express, I'm trying to remember what the exact words were. Yes, the judge believed that that documentation should have been easily available. However, after three attempts to obtain that information, it was not available. It simply could not be obtained. And the respondent or the petitioner did make an effort to obtain that. Now, but again, the judge clearly failed to apply matter of Pula and all the circumstances that should be considered in a discretionary denial. And that is where the judge manifestly misapplied the law. That's where the decision is clearly contrary to the law. He did not consider the respondent or the petitioner's age, health and family, which are all compliant factors. I think in terms of there was all of those things were in the record. It's just a question of and to say that a judge doesn't. It's one thing if you're denied an opportunity to get it in the record. And it's another thing. What do you exactly have to do in terms of does that mean you have to repeat everything in the trial and say, I have considered this, I have considered that I've considered that when you obviously have heard all of it. Immigration judges are generally held to that standard where they have to enumerate the reasons why they deny relief. And he could have to mention every word of the testimony. That's correct, Your Honor. But when you're making a discretionary decision and the board has clearly laid out the reasons why you have to consider and you don't mention those factors, then what are we left with? And especially when my sister. A tougher standard than is imposed, say, on a federal district court. All right. I'm sorry. I was in the middle of speaking. You pass it then. Sorry? Pass it. Go on with your argument. Oh, I'm sorry. Thank you. Now, if the judges, if all immigration judges decided asylum applications in this manner, it would mean that anybody who comes to the U.S. border and avails themselves of those orderly refugee procedures cannot be granted asylum because they've traveled through maybe Canada or Mexico or a third country and may not have availed themselves of those opportunities. The judge simply placed too much weight on that one of many discretionary factors to be considered. And that is evident from pages 47 and 48 of the administrative record. Do you want to reserve your time to balance? Thank you. Thank you. Morning. May it please the court. My name is Robin Bly. I represent the attorney general in this matter. Let me just jump right to my concerns because I think that we are aware of all the facts and the procedural nature. The two areas that I have concerns are that matter of PULA does seem to, you know, put a fairly stringent requirement that you have to talk about the relevant factors. And one of them is family. And the IJ doesn't say much. They have all of their family here and there's lots of them and they go through all of that in the record. And the IJ basically doesn't talk about how that factors into this. And the other is that Mr. Stefo was found generally credible. But then it which means unless then then you have to assume that what he says we have to take that as being true. Well but then the IJ goes on to question why were the papers on the applying for asylum in Australia and seems to maybe not believe him. But there's no adverse credibility finding. Okay. So if we if we assume that he if he was found generally credible it would seem to me that the IJ would have to accept that as true that he did in fact apply for asylum in Australia. And it doesn't seem that the IJ did. Well your honor I don't think that the IJ necessarily disregarded that. He just put less weight to it. It's a balancing of factors and he he he's allowed to give them certain factors less weight. With regards to the matter of Pula not discussing the family in Pula they talked that family may be considered but is not required to be considered. The judge the IJ said at one point that he generally believed Mr. Steffel but then when it came to considering the Australian application for asylum or why they didn't apply in Greece he seemed to disregard that testimony by Mr. Steffel. Can the IJ do that without specifically making an adverse credibility finding. Well your honor I think he can give it less weight in the instance of the being able to apply for asylum in Greece. Mr. Steffel did indicate during testimony that he knew that certain people could apply for asylum. So he did know that people were able to apply for asylum. I'll ask you what this means though. While respondents claim that they applied for us this is a quote Australian government for asylum a matter that should be easily proven there has been insignificant corroboration of that claim. They claim to have applied but I do not believe it. That doesn't seem that he gave it less weight. It seems like he didn't believe it. Well your honor we would contend that he just gave it less weight. He he thought that you know if the person had applied for asylum there should be some paperwork and they had they had not. Why but how do I get around the words they claim to have applied but I do not believe it. Well your honor he that's not exactly what he said. I mean he didn't say I don't believe it. He said there's insignificant corroboration. I mean he that doesn't say that there's no corroboration. That just means that there's not. He would think that there would be more such as a receipt from having said that he filed for asylum with Australia or a copy of the of the application or something of that sort. Is he obligated or she the IJ to say why he or she didn't believe Mr. Jeff. Well I think Jeff testified about the Australian application and the reasons for not applying in Greece for asylum. I think I think she did at some point if I remember correctly in the record maybe during the testimony say something to the effect of why you know what had they been able to get copies of the documents or a receipt and there was nothing and I think there was some mention that that was a little unusual or it may have been in the testimony. I thought I remember seeing something like that. I don't have a specific didn't really say I didn't believe him because no. All right. Go on please. With regard to the matter of pool of factors the judge did take into consideration the fact that they had traveled through Greece that they had not applied for asylum there even though the asylum was available to them that their son worked in Greece and they lived that they were able to live in an apartment there that they were never arrested detained or forced to leave Greece that they voluntarily chose to leave Greece even with forged documents even knowing that after speaking with the female petitioner's brother that who had indicated they had no legal way to come to the United States they came anyway. And there was the issue of family argued before the BIA. Your Honor I don't believe it was I think that it was family was mentioned during the hearing that that the lead petitioners had I believe siblings here and uncles but I don't believe that make a difference here in this court. Well Your Honor it is a record I mean I don't know that they specifically argued that before the board but the immigration judge just there was not a lot of information about any of the petitioners family members here other than that they had some family here and that they had provided money to the petitioners to leave Greece. I just might point out that with withholding their they they cannot just get it taken away they have to go through a procedure that is outlined in the regulations in 1208.24 and they are permitted to work they are permitted to travel they just have to get advanced parole before leaving the country. They cannot gain lawful permanent residence status and they cannot petition for a third party but other than that there's not a great deal of difference between asylum and withholding. I just would point out that if the Attorney General's discretion is supposed to mean anything some who are eligible for asylum under the statutory ability eligibility is quite dramatically different isn't it between asylum and withholding. Well Your Honor I am not really sure. Well he could still be deported from the United States to some third country like Greece couldn't he. Yes if if if that third country was willing to accept him yes he could be. All right go on. If I'm sorry if the discretion is supposed to mean anything some who are eligible and found to be refugees are not going to be granted asylum on discretionary grounds and that was the instance in this case and we would ask that the petition for review be denied. Thank you. The irony in this case is that he established this very high burden that it is more likely than not his liberty or his life for liberty would be harmed if returned to Iraq whereas there's a relatively low standard for asylum that a 1 in 10 chance of return could harm him. So he satisfies this very high burden but then when it comes to the discretionary analysis he doesn't get the discretion. Well you seem to you just seem to want him to get asylum. But why wouldn't it be even if that if the IJ did something wrong why shouldn't it just be remanded so that the IJ can properly weigh all the required factors. That's what the board should have done and our brief was nearly identical to the brief submitted to this court. And so we're raising the same arguments and as you saw the board merely affirmed the decision below without opinion. Now the judge was also overly concerned about one other impact that granting this. Weren't you asking for a grant of asylum. Absolutely. Your grant asking for it outright and I don't what's your authority for that. I mean I think that the best that you could hope for would be a remand. Oh yes. We're not asking that this court grant asylum because you don't have the authority but yes that it be remanded and that they examine the factors of Pula because otherwise we believe that you still could lose if they I mean you still could lose. That's correct. But I don't on this record matter of matter of Pula was simply not applied and that's where the agency failed us. And the judge was also overly concerned about the line that this person is jumping in front of the line. And he suggested that he would deny this person to teach others a lesson not to circumvent the line. There's a moral question there. Do you punish a person. It just as a hypothetical. Do you punish a person in order to teach others a lesson or do you punish a person for what they deserve. We are asking that this person be examined solely on the merits and four corners of his application. And when you look at his advance I think I don't think it is an inappropriate factor to consider. I think it just depends on the facts of the case. And it was and in this case Your Honor it was one I'm done. But in this case it was one of the only factors really two factors that he considered when matter of Pula says there were numerous factors to consider. Thank you very much. Thank you. This matter will stand submitted.
judges: Fisher, Callahan,reed